UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRITTANI WILLIAMS,

        Plaintiff,

    v.

VICTOR HILL, individually and in his
official capacity as the Sheriff of
Clayton County, Georgia, et al.,

        Defendants.

CIVIL ACTION NO.
1:20-CV-0186-JPB-JSA

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter comes before the Court on the Magistrate Judge's Final Report

and Recommendation [Doc. 106].  This Court finds as follows:

## BACKGROUND

Brittani Williams ("Plaintiff") filed this action in the Superior Court of

Clayton County on December 9, 2019, against Victor Hill, Richard Moen and

Derrick Farmer.  [Doc. 1-1].  Hill, Moen and Farmer removed the case to this

Court on January 13, 2020.  [Doc. 1].  Plaintiff amended her complaint on

February 24, 2020, and added Clayton County, Georgia, as a defendant.  [Doc. 4].

Plaintiff then filed a Second Amended Complaint on March 22, 2021.  [Doc. 54].

In the Second Amended Complaint, Plaintiff brought the following claims:

- Count One:  disability discrimination in violation of O.C.G.A §
  34-6A-4 against Hill, Moen and Farmer;
- Count Two:  retaliation in violation of the Family and Medical
  Leave Act against Clayton County and Hill in his official
  capacity;
- Count Three:  violation of the Rehabilitation Act ("RA")
  against Clayton County and Hill in his official capacity; and
- Count Four:  violation of the Americans with Disabilities Act
  ("ADA") against Hill in his official capacity.[1]

Plaintiff has since indicated that she abandoned all claims other than Counts Three and Four against Hill in his official capacity.  [Doc. 92, p. 6 n.3].  Accordingly, only those claims are at issue now.

Farmer filed a Motion for Summary Judgment on July 14, 2021.  [Doc. 79]. Hill, Moen and Clayton County (together, "Defendants") filed a Motion for Summary Judgment on July 16, 2021.  [Doc. 83].  Magistrate Judge Justin Anand issued a Final Report and Recommendation as to both Motions on January 31, 2022.[2]  [Doc. 106].  The Magistrate Judge recommended granting Farmer's Motion and granting in part and denying in part Defendants' Motion.  Defendants filed objections to the Report and Recommendation on March 4, 2022, and Plaintiff replied on March 18, 2022.  [Doc. 115]; [Doc. 116].

---

[1] Plaintiff alleged that Hill violated the ADA in three ways:  (1) failing to reasonably accommodate her disability, (2) terminating her employment because of her disability and (3) terminating her in retaliation for her requests for reasonable accommodations.
[2] The Report and Recommendation sets forth the facts of this case, which are incorporated here by reference.  See [Doc. 106, pp. 1–28].

## ANALYSIS

### A.    Legal Standard

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  Placing this burden on the objecting party "'facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'"  United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

### B.    Findings from the Report and Recommendation

As relevant to Defendants' objections, the Report and Recommendation included the following findings.  First, the Magistrate Judge concluded that Hill waived his Eleventh Amendment immunity by removing the case to federal court

and that, although removal did not waive the defense of sovereign immunity from liability, Hill made no arguments as to the applicability of that defense and therefore waived the issue.  The Magistrate Judge also concluded that even if Hill properly raised the defense, the state of Georgia appears to have waived its immunity from federal disability discrimination claims.  Finally, the Magistrate Judge noted that even if Hill did not waive his Eleventh Amendment immunity by removing the case, Plaintiff would still be entitled to injunctive relief under Ex parte Young, 209 U.S. 123, 159–60 (1908).

Second, as to Plaintiff's ADA and RA claims,[3] the Magistrate Judge concluded that Defendants failed to directly address Plaintiff's retaliation claim in their Motion and thus waived their arguments as to that claim.  Next, the Magistrate Judge determined that Plaintiff presented direct evidence of disability discrimination based on an April 23, 2019 email from Hill.  Even without that direct evidence, the Magistrate Judge found that Plaintiff put forth sufficient circumstantial evidence of discrimination, namely evidence that the proffered reasons for her termination were pretextual.  The Magistrate Judge also determined

---

[3] Discrimination and retaliation claims brought under the ADA are analyzed under the same standards when brought pursuant to the RA.  Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997); Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 F. App'x 243, 245 (11th Cir. 2011).

that Plaintiff was not estopped from claiming that she was a "qualified individual" under the ADA because the representation at issue—Plaintiff's statements in her August 18, 2019 application for benefits from Veterans Affairs ("VA")—occurred *after* Plaintiff's termination.

## C.   Defendants' Objections

Below, the Court addresses Defendants' objections (1) as to Eleventh Amendment immunity and (2) pertaining to Plaintiff's discrimination and retaliation claims.

### 1.   *Eleventh Amendment Immunity*

"The Eleventh Amendment protects a [s]tate from being sued in federal court without the [s]tate's consent," and as a result, "parties with claims against a non-consenting [s]tate must resort to the [s]tate's own courts." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).  States and certain state actors[4] "are immune from suit under the Eleventh Amendment unless their immunity is either waived by the state or abrogated by Congress." Schopler v. Bliss, 903 F.2d 1373, 1379 (11th Cir. 1990).  Removing a case to federal court constitutes waiver of Eleventh Amendment immunity from suit in that forum. Lapides v. Bd. of Regents of Univ.

---

[4] The Eleventh Amendment also affords immunity to "arms of the state." Manders, 338 F.3d at 1308.  It is uncontested that Hill is considered an "arm of the state" in this matter.

Sys. of Ga., 535 U.S. 613, 620 (2002) (holding that a state "voluntarily invoke[s] the federal court's jurisdiction" when removing a case from state court).

The Magistrate Judge found that Hill waived Eleventh Amendment immunity by removing the case to federal court.[5]  Additionally, because Hill did not address whether he retained a sovereign immunity defense as to liability, the Magistrate Judge found that Hill waived that issue.  Hill objects to this second finding, arguing that the Magistrate Judge "mischaracterize[ed] . . . sovereign immunity as a separate and distinct defense" from immunity to suit under the Eleventh Amendment.  [Doc. 115, p. 5].  Ergo, according to Hill, because he briefed the issue of Eleventh Amendment immunity, he necessarily addressed sovereign immunity from liability.

Hill's argument is unavailing.  The Eleventh Circuit Court of Appeals has confirmed that a state's immunity from *suit* in federal court is a distinct concept from a state's immunity from *liability*.  Stroud v. McIntosh, 722 F.3d 1294, 1302 (11th Cir. 2013).  Removing a case to federal court waives a state's immunity from the federal forum.  Lapides, 535 U.S. at 620; see also Stroud, 722 F.3d at 1302 n.3 ("Forum immunity is a jurisdictional immunity that shields a state from suit in

_____

[5] This section refers to "Hill" only, not "Defendants," because the question of Eleventh Amendment immunity concerns Hill only.

federal court.").  Removal, however, does not mean that "a state waives any defense it would have enjoyed in state court—including *immunity from liability* for particular claims."  Stroud, 722 F.3d at 1302 (emphasis added).

Hill argues that he preserved the defense of "Eleventh Amendment sovereign immunity" by raising it in Defendants' answer.[6]  However, Hill failed to brief the issue of sovereign immunity from liability on summary judgment; Hill addressed only his immunity from suit in federal court pursuant to the Eleventh Amendment.  "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments . . . ." Resolution Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (citation omitted).  Hill set forth no arguments related to sovereign immunity from liability. As such, the Magistrate Judge correctly concluded that Hill waived this issue.

Hill contends that, nevertheless, "because sovereign immunity tests a court's subject matter jurisdiction, it can be raised at any time during the proceedings."

---

[6] In Defendants' answer to Plaintiff's First Amended Complaint (i.e., not the operative complaint), Defendants asserted "the defenses of Eleventh Amendment, sovereign, governmental, official, absolute, and/or qualified immunity to the extent allowed by law." [Doc. 8, p. 2].  Clayton County alone filed an answer to Plaintiff's Second Amended Complaint and asserted the same defense.  See [Doc. 81, p. 2].  It does not appear that Hill or Moen joined in this answer or otherwise filed a separate answer to Plaintiff's Second Amended Complaint.

[Doc. 115, p. 5].  Again, Hill conflates immunity from suit in federal court under the Eleventh Amendment with a state's immunity from liability in its own courts. Hill is correct that Eleventh Amendment immunity implicates a court's subject matter jurisdiction.  Whiting v. Jackson State Univ., 616 F.2d 116, 127 n.8 (11th Cir. 1980).  Hill made no arguments, though, that immunity from liability raises questions of subject matter jurisdiction, and the cases cited by Hill do not pertain to this issue.  See id.; see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (discussing qualified immunity); Patsy v. Bd. of Regents, 457 U.S. 496, 515 n.19 (1982) (addressing immunity under the Eleventh Amendment).  Yet Hill bears the responsibility of formulating arguments and citing legal authority in support of his contentions.  Resolution Tr. Corp., 43 F.3d at 599.

Hill also objects to the conclusion that he lacks Eleventh Amendment immunity for the ADA claim because Plaintiff added that claim after removal. However, once Hill waived his immunity from suit in federal court by removing this matter, the Court retains "jurisdiction over the entire *case*—not simply those claims that the complaint alleged at the time of removal."  Stroud, 722 F.3d at 1302 n.3.  For the purposes of Eleventh Amendment immunity, it is inapposite that Plaintiff added a claim after removal.  Hill's objection on this ground is thus without merit.  Further, as the foregoing analysis reflects, the Magistrate Judge did

not err by finding that Hill failed to address, and therefore waived, the issue of sovereign immunity from liability.

Hill raised two additional objections on immunity grounds. First, the Magistrate Judge concluded that even if Hill properly raised the defense of sovereign immunity from liability, that defense "may have been futile" based on Georgia's apparent waiver of sovereign immunity as to federal discrimination claims.[7] [Doc. 106, p. 45]. The Magistrate Judge also found that even if Hill had not waived his Eleventh Amendment immunity, Plaintiff would be entitled to injunctive relief under Ex parte Young. Hill objected to both of these findings. However, the Court concluded that Hill waived Eleventh Amendment immunity by removing this case and that he failed to argue, and thus waived, the issue of sovereign immunity from liability. Accordingly, the Court declines to address Hill's remaining objections pertaining to immunity. Defendants' objections on this ground are **OVERRULED**.

2. *Discrimination and Retaliation Claims*

A plaintiff may state a claim for discrimination or retaliation in multiple ways. First, a plaintiff may provide direct evidence of discrimination or retaliation. "Direct evidence of discrimination is 'evidence which reflects a discriminatory or

---

[7] The Court takes no position on this issue.

retaliatory attitude correlating to the discrimination or retaliation complained of by the employee' and 'that, if believed, proves the existence of a fact without inference or presumption.'" Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1320 (11th Cir. 2012) (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)).  Second, in the absence of direct evidence, a plaintiff may rely on circumstantial evidence to show discrimination.  Id.  Courts "generally apply the McDonnell Douglas burden-shifting framework" to assess discrimination claims based on circumstantial evidence.  Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022).  However, a plaintiff may also "'present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  Id. at 1250 (quoting Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).  Accordingly, a plaintiff may show discrimination through direct evidence or through circumstantial evidence under *either* the McDonnell Douglas framework *or* the convincing mosaic approach.

Defendants raise the following objections about the Magistrate Judge's findings with respect to Plaintiff's discrimination and retaliation claims:  (i) Defendants did not waive their arguments as to retaliation; (ii) the Magistrate Judge incorrectly concluded that Plaintiff showed direct evidence of discrimination; (iii) the Magistrate Judge erroneously found that Plaintiff

established pretext; (iv) the Magistrate Judge should have conducted a "comparator analysis"; and (v) Plaintiff should be estopped from asserting that she is a "qualified individual" under the ADA.  The Court addresses these objections in turn.

### i.   *Waiver of Arguments as to Retaliation Claims*

The Magistrate Judge determined that Defendants "d[id] not directly address Plaintiff's retaliation claim in their opening brief" and thus waived those arguments.  [Doc. 106, p. 84].  While Defendants addressed Plaintiff's retaliation claims in their reply brief, the Magistrate Judge correctly noted that "[t]he Court does not generally entertain arguments presented for the first time in a reply brief." Id.  Defendants claim that they did not waive their arguments as to Plaintiff's retaliation claims.

In the brief supporting the Motion for Summary Judgment, Defendants included headings that reference Plaintiff's ADA and RA discrimination and retaliation claims.  See [Doc. 83-2, p. 11].  In a footnote, Defendants indicated that "[c]laims for discrimination and retaliation under the RA are governed under the same standard applicable to those brought under the ADA."  Id. at 11 n.4. Defendants thus contend that they sufficiently briefed Plaintiff's retaliation claims.

It is true that an ADA discrimination claim is analyzed under the same standard when brought under the RA; the same goes for retaliation claims.  See supra n.3.  However, a claim for *discrimination*—whether under the ADA or RA—is a separate claim than one for *retaliation*.  To show a prima facie case of discrimination, a plaintiff must establish that "(1) [s]he has a disability, (2) [s]he is a 'qualified individual,' . . . and (3) the defendant unlawfully discriminated against [her] because of the disability."  Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000).  In contrast, to establish a retaliation claim, a plaintiff must demonstrate "(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action."  Wofsy v. Palmshores Ret. Cmty., 285 F. App'x 631, 634 (11th Cir. 2008) (quoting Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998)).  Retaliation claims and discrimination claims clearly have different elements.  While Defendants briefed the issue of Plaintiff's discrimination claims, they did not set forth any arguments pertaining to retaliation.  Because these are distinct claims, presenting arguments as to one is not sufficient to preserve arguments as to the other.  Accordingly, the Magistrate Judge correctly found that Defendants waived their arguments regarding Plaintiff's retaliation

claims.  Accordingly, the Court's remaining discussion will address only Plaintiff's claims for discrimination.

> ii.      *Direct Evidence of Disability Discrimination*

Establishing discrimination through direct evidence is a "rigorous standard." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999).  Direct evidence of discrimination evinces "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  Id. at 1358 (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998)).  However, direct evidence includes "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor.'"  Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (quoting Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999)).

Defendants object to the Magistrate Judge's conclusion that Plaintiff presented direct evidence of discrimination on the basis of disability.  To briefly review the relevant facts, on April 23, 2019, Plaintiff emailed a letter from her medical providers to, among others, Moen, Farmer and Rayjaunda Hardnett, the Assistant Clerical Chief Supervisor.  That letter described Plaintiff's ongoing treatment for trauma-related symptoms and explained that Plaintiff's "recent

13

changes in work duties," including working after dark, being alone in the office or interacting with strangers, "may need to be considered in regards to supporting this veteran's gainful employment." [Doc. 106, pp. 12–13]. That same day, Hardnett forwarded the email to Hill, who responded with the following instructions: "Do a fit for duty status and release her from employment. Unfortunately we do not have any positions that can accommodate this." [Doc. 80-9, p. 1]. Plaintiff participated in the fitness for duty exam on June 19, 2019. The parties dispute whether Hill ever saw the results from Plaintiff's exam, but in any case, Plaintiff was placed on unpaid leave on June 21, 2019, and terminated by Hill on June 28, 2019.

The Magistrate Judge found that direct evidence of discrimination existed based on Hill's April 23, 2019 email; it was sent "on the very same day [Plaintiff] presented a letter from her medical providers that indicated she was undergoing psychiatric treatment for depression and anxiety" and contained instructions to release Plaintiff from employment. [Doc. 106, p. 79]. In their objections, Defendants frame Hill's email as "seeking a fitness for duty exam[] and possible termination of Plaintiff *thereafter*." [Doc. 115, p. 13]. They also argue that the email was insufficiently contemporaneous with Plaintiff's termination to serve as direct evidence and that the statement "does not establish without any inference or presumption that Plaintiff was being terminated . . . because she was disabled." Id.

Defendants' arguments are not persuasive.  First, Hill's email is not qualified in the manner Defendants suggest.  Hill did not recommend Plaintiff's "possible" termination at some point in time or upon the occurrence of some condition; Hill's exact words were "[d]o a fit for duty status and release her from employment." [Doc. 80-9, p. 1].  Second, the case cited by Defendants in support of the contemporaneity argument does not dictate a conclusion that Plaintiff failed to present direct evidence.  In Williamson v. Adventist Health System/Sunbelt, Inc., the plaintiff alleged that "he was the subject of a racial epithet" and that his supervisors "commented on his race and national origin more than once."  372 F. App'x 936, 938 (11th Cir. 2010).  The Eleventh Circuit held that "[t]o qualify as direct evidence of discrimination, . . . a biased statement by a decisionmaker" must "be made concurrently with the adverse employment *event*, such that no inference is necessary to conclude that bias necessarily motivated the decision."  Id. at 940 (emphasis added).  The court went on to explain that "a biased statement, separate in time from the employment *decision* under challenge, is not direct evidence of discrimination."  Id. (emphasis added).

Here, although Plaintiff's employment formally ended on June 28, 2019, the *decision* to terminate her arguably occurred on April 23, 2019.  If the employment *decision* is the critical event—which the Eleventh Circuit appears to suggest—then

Hill's unconditional instruction to terminate Plaintiff is sufficiently contemporaneous to qualify as direct evidence.

Furthermore, this case bears different facts from <u>Williamson</u>.  At issue is not a biased statement at some unspecified point in time, but rather Hill's response to Plaintiff's need for accommodations with the unqualified, contemporaneous instruction to release Plaintiff from employment.  These circumstances do not seem to demand an intuitive leap to connect Hill's statement and Plaintiff's termination.  That aside, Defendants do not identify what "inference" is needed in order to view the April 23, 2019 email as direct evidence of discrimination.

The Court declines to definitively hold that Plaintiff established direct evidence of discrimination.  However, the Court concludes that a reasonable jury could find that Hill's email—ordering Plaintiff's termination in response to Plaintiff's need for accommodations—constitutes direct evidence of discrimination.  As such, the Court finds that a genuine issue of fact exists as to whether Plaintiff showed direct evidence of discrimination.  <u>EEOC v. Joe's Stone Crabs, Inc.</u>, 296 F.3d 1265, 1272 (11th Cir. 2002) ("Whether an employer intentionally discriminated against an employee . . . is a question of fact, which may be proved either through direct or circumstantial evidence.").

### iii.        Pretext

Even if Plaintiff did not show direct evidence of discrimination, the Magistrate Judge concluded that she showed sufficient circumstantial evidence to survive summary judgment.  Specifically, the Magistrate Judge determined that Hill's April 23, 2019 email "provides evidence sufficient to create a material fact as to whether . . . Hill's purported 'legitimate' reason for terminating Plaintiff's employment was mere pretext."  [Doc. 106, pp. 79–80].  Defendants argue that Plaintiff did not establish pretext for her termination.

To withstand a motion for summary judgment, a plaintiff "'must introduce significantly probative evidence showing that the asserted reason [for the adverse employment action] is merely a pretext for discrimination.'"  Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993)).  "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, *and* that discrimination was the real reason.'"  Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).  When assessing whether a plaintiff has established pretext, a court's task is to "evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could find them unworthy of credence.'" Combs v.

Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting Sheridan v. E.I.

DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)).

As noted earlier, Hill sent an email on April 23, 2019, ordering Plaintiff to

undergo a fitness for duty exam and to be released from employment.  Plaintiff

completed the exam on June 19, 2019.  On June 20, 2019, Hill emailed Moen and

stated that "we cannot accommodate this."[8]  [Doc. 106, p. 15].  Then, on June 21,

2019, Plaintiff went to work with her hair dyed red, allegedly in violation of CCSO

dress code.  Plaintiff was placed on administrative leave that day, and on June 28,

2019, Hill terminated Plaintiff's employment.  Hill claimed that he ended

Plaintiff's employment because of insubordination and because CCSO could not

provide Plaintiff with the accommodations recommended in the results of her

fitness for duty exam.

As these facts show, Hill ordered Plaintiff's termination on April 23, 2019,

*before* she was allegedly insubordinate and *before* Plaintiff underwent the fitness

for duty exam.  Plaintiff presented evidence that another employee, with hair dyed

---

[8] It is disputed whether Hill saw the results of Plaintiff's exam at all and specifically
whether he saw them before sending this email.  Defendants claim that Hill reviewed the
results from the exam.  Plaintiff claims that he did not, citing to Hill's deposition
testimony that he could not "recall" reviewing Plaintiff's exam.  [Doc. 106, p. 15].

a nearly indistinguishable color from Plaintiff's, was never disciplined, suggesting that the cited reason for Plaintiff's termination was false.  Further, Hill's email provides circumstantial evidence that the real reason for Plaintiff's termination was her disability.  This evidence is sufficient to raise a triable issue of fact as to whether Hill's reason for Plaintiff's termination was pretextual.  Consequently, the Court agrees with the Magistrate Judge that this sequence of events "provides, at a minimum, circumstantial evidence that [Hill] made the decision to terminate Plaintiff's employment well before anyone accused her of violating the hygiene policy by having dyed red hair or being insubordinate."  Id. at 79.  Defendants' objection that Plaintiff failed to show pretext is thus overruled.

> iv.      *Use of Comparator Analysis*

According to Defendants, the Magistrate Judge erred in his assessment of Plaintiff's discrimination claims by neglecting to conduct a "comparator analysis." It is true that the Magistrate Judge considered only pretext when analyzing whether Plaintiff showed sufficient circumstantial evidence of discrimination.  However, Defendants are incorrect that this was error.  "[E]stablishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.  Accordingly, the plaintiff's failure to produce a comparator

does not necessarily doom the plaintiff's case." Smith, 644 F.3d at 1328.  For

example, a plaintiff may show a "convincing mosaic" of discrimination with

circumstantial evidence of, among other things, pretext.  Jenkins, 26 F.4th at 1250.

As such, it was not error for the Magistrate Judge to decline to conduct a

"comparator analysis."

> v.    *Judicial Estoppel*

Defendants argue that Plaintiff should be estopped from asserting that she is

a "qualified individual" as defined by the ADA.  Under that statute, "[a]n

individual is 'qualified' if she, with or without reasonable accommodation, can

perform the essential functions and job requirements of the position the individual

holds."  Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).  An

individual who cannot perform an essential function of the job, even with a

reasonable accommodation, is not a "qualified individual" for ADA purposes.

McKane v. UBS Fin. Servs., Inc., 363 F. App'x 679, 681 (11th Cir. 2010).

Additionally, if a plaintiff applied for and received disability benefits, she may be

estopped from claiming that she is a "qualified individual" under the ADA.

Williams-Evans v. Advance Auto Parts, 843 F. App'x 144, 147 (11th Cir. 2021).[9]

---

[9] This case (and others cited by Defendants) concerns the receipt of Social Security
benefits.  For the purposes of addressing Defendants' objection on this point, the Court

Whether estoppel applies depends on the plaintiff's "specific statements." Id.  If a plaintiff "made a previous sworn statement asserting that she is disabled and unable to work, the 'court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim' before allowing her claim to proceed." Id. (quoting Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 807 (1999)).  However, "if an individual has merely applied for, but has not been awarded," disability benefits, the individual may maintain a claim under the ADA.  Cleveland, 526 U.S. at 805.

While Plaintiff worked at CCSO, she received VA disability benefits and was rated at 80% disability.  She was terminated on June 28, 2019.  On August 18, 2019, Plaintiff signed an application for VA benefits and represented therein that she "became too disabled to work" on June 21, 2019—the day she was placed on unpaid leave.  [Doc. 106, p. 67].  Several months later, on March 31, 2020, the VA increased Plaintiff's disability rating to 100%, effective as of August 30, 2019.

Although Plaintiff represented to the VA that she "became too disabled to work" as of June 21, 2019, Plaintiff did not represent that she was "too disabled to work" during any period of her active employment.  Further, her 100% disability

---

will assume without deciding that the principle set forth in Williams-Evans applies to claims for VA benefits.

status did not go into effect until well after her termination.  Under these facts,

Plaintiff has no obligation "to explain why her contentions" to the VA, made *after*

her termination, "were consistent with her ADA claim."  <u>Williams-Evans</u>, 843 F.

App'x at 147.

Based on the above analysis, Defendants' objections as to Plaintiff's

discrimination and retaliation claims are **OVERRULED**.

## CONCLUSION

Defendants' objections [Doc. 115] to the Report and Recommendation are

**OVERRULED**.  The Report and Recommendation [Doc. 106] is **ADOPTED** as

the order of this Court.  Farmer's Motion for Summary Judgment [Doc. 79] is

**GRANTED**.  The disposition of Defendants' Motion [Doc. 83] is as follows:

- As to Hill, Moen and Clayton County, **GRANTED** as to Counts One and Two;
- As to Clayton County, **GRANTED** as to Count Three in its entirety and Count Four in its entirety;
- As to Hill, **GRANTED** as to Count Three to the extent that the claim is based on a failure to accommodate but **DENIED** to the extent that the claim is based on retaliation and disability discrimination;
- As to Hill, **GRANTED** as to Count Four with respect to the failure-to-accommodate claim but **DENIED** with respect to the claim based on Plaintiff's termination.

Accordingly, all claims against Clayton County, Moen and Farmer are

**DISMISSED**.  The remaining parties are **HEREBY ORDERED** to file the

consolidated pretrial order required by Local Rule 16.4 no later than twenty-one days from the entry of this Order.  The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment.  In the event a consolidated pretrial order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

      **SO ORDERED** this 31st day of March, 2022.

 

_____

**J. P. BOULEE**

United States District Judge