UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRITTANI WILLIAMS,

       Plaintiff,

   v.

LEVON ALLEN, in his official
capacity as the Sheriff of Clayton
County, Georgia,

       Defendant.

CIVIL ACTION NO.
1:20-CV-00186-JPB

## ORDER

This matter comes before the Court on Levon Allen's ("Defendant") Motion for Judgment on the Pleadings [Doc. 131]. This Court finds as follows:

## BACKGROUND

This case arises from Brittani Williams's ("Plaintiff") claims that her former employer, the Clayton County Sheriff's Office, discriminated against her on the basis of her disability. Plaintiff filed this action in the Superior Court of Clayton County on December 9, 2019, against Victor Hill, the former Sheriff of Clayton County, in his official capacity.[1] [Doc. 1-1]. Hill removed the matter to this Court

---

[1] Other defendants were named in this action, but the claims against them have been abandoned or dismissed.

on January 13, 2020.  [Doc. 1].  The operative complaint is the Second Amended Complaint, filed on March 22, 2021.  [Doc. 54].

Hill moved for summary judgment on July 16, 2021.  [Doc. 83].  On January 31, 2022, Magistrate Judge Justin S. Anand recommended granting in part and denying in part the motion for summary judgment.  [Doc. 106].  The Court adopted the Report and Recommendation ("R. & R.") on March 31, 2022.  [Doc. 118]. Following the summary judgment ruling, Plaintiff's remaining claims are for disability discrimination and retaliation under the Rehabilitation Act ("RA") and Title I of the Americans with Disabilities Act ("ADA").

While this case was pending, Hill was indicted for, convicted of and sentenced to custody for several counts of federal civil rights violations, and he subsequently retired from office.  Because the position of Clayton County Sheriff remained vacant during the pendency of Hill's criminal proceedings, this case was stayed from April 13, 2022, until January 20, 2023.  [Doc. 120]; [Doc. 123]. Levon Allen has since been appointed as Sheriff of Clayton County and was substituted as the defendant in this case on January 20, 2023.

After obtaining leave of Court, Defendant filed the instant Motion for Judgment on the Pleadings on March 10, 2023, primarily addressing the issue of sovereign immunity.  [Doc. 131].  The motion is now ripe for review.

## ANALYSIS

### A.    Legal Standard

A party may move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure once the pleadings are closed but early enough to avoid delaying trial.  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). When determining whether a party is entitled to judgment on the pleadings, a district court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). A motion for judgment on the pleadings under Rule 12(c) poses the same question as that presented by a motion to dismiss under Rule 12(b)(6):  whether the complaint states a claim for relief. Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002).

Plaintiff seeks both money damages and injunctive relief to redress the alleged ADA violations.  Defendant argues that (1) he is entitled to sovereign immunity from liability on Plaintiff's claim for money damages under the ADA and (2) Plaintiff cannot pursue injunctive relief because Ex parte Young, 209 U.S.

123 (1908), does not apply to the facts of this case.[2]  The Court addresses these

arguments below.

**B.     Sovereign Immunity from Liability on ADA Claims**

The Eleventh Amendment to the United States Constitution provides that

"[t]he judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States by

citizens of another state, or by citizens or subjects of any foreign state."  U.S.

Const. amend. XI.  Immunity under the Eleventh Amendment implicates the

subject matter jurisdiction of the federal courts.  Seminole Tribe of Fla. v. Florida,

517 U.S. 44, 72–73 (1996) ("The Eleventh Amendment restricts the judicial power

under Article III . . . .").  The Eleventh Amendment is an "absolute bar" to suit

against a state[3] in federal court, with two exceptions:  (1) where Congress has

abrogated immunity or (2) if the state has waived its immunity to suit in federal

---

[2] Defendant also argues that Plaintiff may not recover emotional distress damages under the RA in light of the United States Supreme Court's ruling in Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1571–76 (2022).  In response, Plaintiff indicated that "she does not oppose the applicability or effect of Cummings" to her RA claims. [Doc. 132, p. 2].  Accordingly, the Motion is **GRANTED** on this issue.

[3] The Eleventh Amendment also affords immunity to "arms of the state."  Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).  It is uncontested that Defendant is an "arm of the state" in this matter.

court.[4]  Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1511 (11th Cir. 1986).  It is well settled that Congress has not validly abrogated the Eleventh Amendment immunity of the states for claims brought under Title I of the ADA.  See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 (2001).  The next question is thus whether the State of Georgia has waived its Eleventh Amendment immunity for claims brought under the ADA.

Courts may find a waiver of Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'"  Edelman v. Jordan, 415 U.S. 651, 673 (1974) (alteration in original) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)).  "The test to determine if a state has waived its sovereign immunity 'is a stringent one.'"  Barnes v. Zaccari, 669 F.3d 1295, 1308 (11th Cir. 2012) (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999)).  As such, any waiver of Eleventh Amendment immunity "must specifically permit suits in

---

[4] There is a third exception:  Eleventh Amendment immunity does not apply where a plaintiff seeks prospective injunctive relief pursuant to Ex parte Young.  See Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999) ("The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law.").  That issue is discussed separately in this order.  See supra Part C.

federal court." Id.  In the same vein, a state does not waive its Eleventh

Amendment immunity by consenting to suit in its own courts.  Crisman v. Fla. Atl.

Univ. Bd. of Trs., 572 F. App'x 946, 947–48 (11th Cir. 2014).

This case presents the additional question of the effect of removal on a

state's sovereign immunity.[5]  In Lapides v. Board of Regents of the University

System of Georgia, the United States Supreme Court held that removing a case to

federal court (and thereby voluntarily invoking federal jurisdiction) constitutes a

waiver of Eleventh Amendment immunity from suit in that forum.  535 U.S. 613,

620 (2002).  Lapides concerned the specific situation where "a [s]tate has waived

its own immunity in state court as to certain state-law claims"; the Supreme Court

determined that the state "cannot undo that waiver merely by removing to federal

court and seeking to use the Eleventh Amendment to do its work for it."  Anderson

v. Bd. of Regents of the Univ. Sys. of Ga., 822 F. Supp. 2d 1342, 1355 (N.D. Ga.

---

[5] Although the terminology is sometimes used interchangeably, a state's sovereign
immunity in state court is different from the state's immunity in federal court under the
Eleventh Amendment.  Sossamon v. Texas, 563 U.S. 277, 285 (2011) ("[A] [s]tate's
consent to suit in its own courts is not a waiver of its immunity from suit in federal
court."); see also Sanford v. Ga. Dep't of Pub. Safety, No. 1:20-CV-4532, 2021 WL
3073696, at *9 (N.D. Ga. June 7, 2021) ("[A] state's sovereign immunity in its own
courts is distinct from the sovereign immunity it enjoys in federal court; although both
stem from the states' pre-Constitution sovereignty, the latter is 'crystallized' by the
Eleventh Amendment, which particularly 'preserves states' sovereign immunity in the
federal courts.'" (quoting Stroud v. McIntosh, 722 F.3d 1294, 1297–98 (11th Cir.
2013))).

2011) (footnote omitted).  Lapides did not discuss, however, whether a state retains immunity from liability in federal court after removal "where the state has not relinquished its immunity in its own courts against the claim in question."  Stroud v. McIntosh, 722 F.3d 1294, 1300 (11th Cir. 2013).  The Eleventh Circuit Court of Appeals addressed that issue in Stroud, holding that removing a case to federal court waives a state's immunity-based objection to the federal forum but does not also waive the state's "underlying immunity from liability."  Id. at 1301.  In other words, "a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts."  Id.  Stroud clarified that "nothing in Lapides suggests that a state," by removing a case to federal court, "waives any defense it would have enjoyed in state court—including immunity from liability for particular claims."  Id. at 1302; see also, e.g., Crawford v. Ga. Dep't of Transp., No. 1:16-CV-3810, 2017 WL 1405326, at *4 (N.D. Ga. Apr. 20, 2017) ("Whether the state retains its separate immunity from liability as to a particular claim . . . is a separate issue, determined according to the state's law.").

In sum, removing a case to federal court waives a state's objection to the federal forum.  It does not, however, foreclose the state's ability to assert a defense—including immunity from liability—that the state would have enjoyed had the case remained in the state's own courts.  Stroud, 722 F.3d at 1302.  It

stands to reason that the reverse must also be true:  the state cannot *gain* an affirmative defense by removal that would have been unavailable had the case proceeded in the state forum.  Consequently, this Court must determine whether Defendant would have enjoyed sovereign immunity from liability on Plaintiff's ADA claims had this case remained in the Superior Court of Clayton County—in other words, whether Georgia has waived sovereign immunity for ADA claims in its own courts.

The Constitution of the State of Georgia provides that the state's sovereign immunity may be waived only by an "[a]ct of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Ga. Const. Art. 1, § 2, ¶ IX(e).  Although implied waivers of sovereign immunity are not favored, "[t]his does not mean . . . that the Legislature must use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory waiver of sovereign immunity."  Ga. Dep't of Corr. v. Couch, 759 S.E.2d 804, 809 (Ga. 2014) (alterations in original) (quoting Colon v. Fulton County, 751 S.E.2d 307, 310 (Ga. 2013)).

The Georgia Court of Appeals has held that the Fair Employment Practices Act ("FEPA"), a state law, waived Georgia's sovereign immunity for federal disability discrimination claims.  Williamson v. Dep't of Hum. Res., 572 S.E.2d

678, 681 (Ga. Ct. App. 2002).[6]  As relevant here, the plaintiff in <u>Williamson</u> sued the Georgia Department of Human Resources and the Georgia Regional Hospital in state court for failing to provide a reasonable accommodation under the ADA. <u>Id.</u> at 680.  The trial court dismissed the plaintiff's ADA claim as barred by the doctrine of sovereign immunity.  <u>Id.</u>

The Georgia Court of Appeals reversed.  The court explained that the FEPA created a right of action against the state for disability discrimination, which showed that Georgia "specifically waived its sovereign immunity to the extent of the action authorized by the FEPA." <u>Id.</u> at 681.  The court then held that because "the state by legislative act waived its sovereign immunity as to *state* disability discrimination claims by its employees, the state [could] not selectively cloak itself in sovereign immunity as to *federal* disability discrimination claims by its employees." <u>Id.</u>  Doing so "would discriminate against federally based rights[,] which the Supremacy Clause of the United States Constitution forbids states to do." <u>Id.</u>

---

[6] The Magistrate Judge cited <u>Williamson</u> in the R. & R.  <u>See</u> [Doc. 106, pp. 45–47]. When adopting the R. & R., this Court took no position on whether <u>Williamson</u> constituted a waiver of Georgia's sovereign immunity for ADA claims, concluding instead that Defendant had failed to properly address the issue of sovereign immunity from liability in the summary judgment briefing.  <u>See</u> [Doc. 118, p. 9 n.7].  The Court addresses that issue now that it is fully briefed.

Williamson thus interpreted the existence of a state-law cause of action for disability discrimination (under the FEPA) as waiving Georgia's sovereign immunity for claims brought under the ADA.  According to Williamson, then, Georgia has waived its sovereign immunity for ADA claims.  As a result, had the instant case continued in state court, it seems that Defendant would not enjoy any sovereign immunity defense to liability.

Defendant argues that this Court should nonetheless find that he is entitled to sovereign immunity on the grounds that Williamson does not constitute a proper waiver of immunity from ADA claims in federal court.  First, Defendant contends that "the existence of a Georgia law allowing recovery for state disability claims is not relevant to whether Georgia waived its sovereign immunity for *federal* disability claims."  [Doc. 131, p. 10].  When making this argument, however, Defendant conflates Eleventh Amendment immunity from suit in a federal forum with Georgia's sovereign immunity in its own courts.  As explained above, the issue for the Court is whether, after waiving Eleventh Amendment immunity to *suit* by removing this case, Defendant enjoys any additional defense to *liability*— such as sovereign immunity—that he would have enjoyed in state court.  And in state court, Williamson would prevent Defendant from asserting the defense of sovereign immunity.

Second, Defendant contends that several courts in this circuit have "routinely found" that the FEPA does not contain an express waiver of Georgia's sovereign immunity for ADA claims in federal court.  Id. at 12.  Defendant is not wrong; several courts have reached this conclusion.  However, the cases cited by Defendant originated in federal court, and consequently their analyses were limited to whether the state waived its Eleventh Amendment immunity to suit in federal court for discrimination claims.[7]  But determining whether a state has waived immunity under the Eleventh Amendment for a particular claim is a different inquiry from whether that state waived sovereign immunity from liability in its own courts.  That latter question is before the Court now.

To illustrate, had Plaintiff brought this case in federal court, it is likely that her ADA claims (to the extent she seeks damages as relief) would be barred by the

_____

[7] See Sanford, 2021 WL 3073696, at *10 ("As federal courts in Georgia have observed, [Williamson] did not purport to hold that Georgia has waived its immunity from disability discrimination claims *brought in federal court*." (emphasis added)); Ferst v. Norton, No. CIV.A.7:07-CV-78, 2009 WL 927945, at *3 (M.D. Ga. Mar. 30, 2009) (concluding that "the General Assembly's creation of a state cause of action for public employment discrimination through [the] FEPA does not waive the [s]tate's Eleventh Amendment immunity in federal court"); Jackson v. Oconee Cmty. Serv. Bd., No. 5:06-CV-55, 2006 WL 1652236, at *4 (M.D. Ga. June 8, 2006) (finding "no support whatsoever" for the argument that the FEPA "waived the [s]tate's Eleventh Amendment immunity in *federal* court"); Walker v. Georgia, No. 1:03-CV-0461, 2005 WL 8154325, at *8 (N.D. Ga. Aug. 8, 2005) ("Williamson does not directly support a finding that the State of Georgia has consented to suit in federal court for violation of Title I of the ADA."), R. & R. adopted, 2005 WL 8154326 (N.D. Ga. Sept. 23, 2005).

Eleventh Amendment.  Congress has not validly abrogated the Eleventh

Amendment immunity of the states under the ADA, and the Court doubts that the

FEPA—which contains no express language regarding Georgia's consent to suit in

federal court, let alone for ADA claims—would meet the strict test for finding a

waiver of Eleventh Amendment immunity.  E.g., Gary v. Ga. Dep't of Hum. Res.,

323 F. Supp. 2d 1368, 1372 (N.D. Ga. 2004) (for a case brought in federal court,

noting that the state agency defendant "may be sued in state court for alleged

violations of the ADA" but that Georgia had not otherwise consented to being sued

in federal court for ADA claims (citing Williamson, 572 S.E.2d at 681)).  But here,

Plaintiff did not bring her claims in federal court; she brought them in the Superior

Court of Clayton County.  Stroud is clear that removal, albeit sufficient to waive

Eleventh Amendment immunity from the federal forum, does not "address other

aspects of sovereign immunity, including a state's immunity from liability."  722

F.3d at 1302.  As the Court's preceding analysis shows, Williamson established

that Georgia has waived its sovereign immunity from liability for claims under the

ADA.

A very recent case considered this exact issue—the effect of Williamson on

the state's assertion of sovereign immunity for ADA claims after removal to

federal court—and determined that Williamson controlled.  See Musson v. Jones,

No. 4:22-cv-124, 2023 WL 2587490, at *13 (S.D. Ga. Mar. 21, 2023).  The court

explained its reasoning as follows:

> Had [the plaintiff] chosen to file her suit in federal court, [the
> state agency] would have a valid immunity argument.
> However, [the plaintiff] filed her suit in *state* court, where she
> clearly would have been able to litigate her ADA claims, as—
> under <u>Williamson</u>—[the state agency] would not have been able
> to assert sovereign immunity.  The fact that [the state agency]
> thereafter made the voluntary decision to remove the case to
> federal court does not re-cloak it in immunity.

<u>Id.</u> (citation omitted).  That logic applies here and provides support for the Court's

conclusion that sovereign immunity does not bar Plaintiff's ADA claims.

Finally, Defendant asserts that <u>Williamson</u> is "wrongly decided" and that

this Court should not follow its holding.  [Doc. 131, p. 13].  Defendant claims that

<u>Williamson</u> relied on "faulty reasoning" and on cases that do not support its

ultimate conclusion.  <u>Id.</u> at 14.  This Court cannot simply disregard <u>Williamson</u>,

though.  In the absence of binding precedent from a state's highest court, federal

courts must generally follow decisions of the state's intermediate courts.  <u>Turner v.</u>

<u>Wells</u>, 879 F.3d 1254, 1262 (11th Cir. 2018).  "A federal court is bound by this

rule whether or not the court agrees with the reasoning on which the state court's

decision is based or the outcome which the decision dictates."  <u>Silverberg v. Paine,</u>

<u>Webber, Jackson & Curtis, Inc.</u>, 710 F.2d 678, 690 (11th Cir. 1983).  The Court

may decline to follow decisions of the state's intermediate courts only "if

persuasive evidence demonstrates that the highest court would conclude otherwise." Turner, 879 F.3d at 1262.

Defendant contends that persuasive evidence exists that the Supreme Court of Georgia would reach a conclusion other than that reached by Williamson, namely that the Williamson court failed to follow the "critical, required analysis under Georgia law" for finding a proper waiver of sovereign immunity. [Doc. 131, p. 15]. As this Court noted previously, the Georgia Constitution requires that waivers of sovereign immunity occur only by a legislative act that specifically provides for the nature and extent of any such waiver. Ga. Const. Art. 1, § 2, ¶ IX(e). The FEPA does not appear to contain any reference to the ADA or to federal discrimination claims. See generally O.C.G.A. § 45-19-20 *et seq*. Were this Court starting on a blank slate, the Court might hesitate to find that the FEPA provides a waiver of Georgia's sovereign immunity for claims brought under the ADA.

This Court, however, is not starting on a blank slate, and any doubts about the soundness of Williamson's reasoning are not sufficient for this Court to disregard its holding. See Silverberg, 710 F.2d at 690. Moreover, evidence exists that the Supreme Court of Georgia would *not* disagree with Williamson. That court denied certiorari in the case in 2003 and has not overruled the case or

14

revisited the issue in the two decades since.  The Supreme Court of Georgia has

also cited Williamson with approval in a discussion of sovereign immunity

principles.  Colon v. Fulton County, 751 S.E.2d 307, 310 (Ga. 2013), overruled on

other grounds by Rivera v. Washington, 784 S.E.2d 775, 778 n.7 (Ga. 2016).

Defendant has not pointed to any courts that have declined to follow Williamson

under circumstances similar to those here (i.e., where a state actor asserts sovereign

immunity in federal court after removing the case).  In this posture, the Court will

follow Williamson and apply its holding that Georgia has waived its sovereign

immunity for ADA claims in state court.  As such, Defendant may not remove the

case and then assert the defense of sovereign immunity where that defense would

be unavailable had the case remained in the state forum.

Both parties suggest that this Court could or should certify to the Supreme

Court of Georgia the question of whether Williamson effectively waived Georgia's

sovereign immunity for ADA claims.  [Doc. 131, p. 14 n.4]; [Doc. 132, p. 7].  A

federal court may certify to the Supreme Court of Georgia a question of state law

(1) that is "determinative of the case" and (2) on which "there are no controlling

precedents in the decisions of the Supreme Court" of Georgia.  O.C.G.A. § 15-2-

9(a).  The second factor is met:  there does not appear to be any controlling case

law from the Supreme Court of Georgia answering the question of whether

Georgia has waived its sovereign immunity for ADA claims.  The first factor,

however, is not satisfied.  As discussed below, even if Defendant were immune

from Plaintiff's request for money damages under the ADA, Plaintiff may

nonetheless pursue injunctive relief under Ex parte Young.  As such, whether

Williamson was correctly decided is not outcome determinative of this case.  See,

e.g., Echols v. Ga. Piedmont Tech. Coll., No. 1:20-CV-2794, 2021 WL 870717, at

*2 (N.D. Ga. Mar. 9, 2021) (declining to certify to the Supreme Court of Georgia

the question of whether Georgia waived its sovereign immunity for federal age

discrimination claims because it was not outcome-determinative, i.e., any

sovereign immunity defense would not preclude an order requiring reinstatement

under Ex parte Young).  This Court therefore declines to certify a question on this

issue to the Supreme Court of Georgia.

For the reasons set forth above, the Motion is **DENIED** to the extent that

Defendant asserts sovereign immunity on Plaintiff's claim for damages under the

ADA.

C.    **Applicability of Ex parte Young to ADA Claims**

Ex parte Young operates as an exception to the Eleventh Amendment's

ordinary bar on suits against the state by allowing a plaintiff to sue state officers in

their official capacity for prospective equitable relief.  209 U.S. 123, 155–56

(1908); see also Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011) ("[A] suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment.").  Even if a state has sovereign immunity under the Eleventh Amendment for ADA claims, a plaintiff may rely on Ex parte Young to maintain an action for injunctive relief.  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001).

In this case, Plaintiff seeks reinstatement as a remedy for Defendant's alleged violations of the ADA.[8]  See [Doc. 54, p. 15].  Defendant contends that reinstatement is not available for Plaintiff's ADA claims "under the unique facts of this case." [Doc. 131, p. 18].  Specifically, Defendant argues that because a county sheriff is an elected constitutional officer under Georgia law, Plaintiff is not entitled to reinstatement because Hill—the sheriff during her term of

---

[8] As to her ADA claims, Plaintiff also seeks backpay and an award of front pay as an alternative to reinstatement.  [Doc. 54, pp. 15–16].  Defendant claims that Ex parte Young is inapplicable to these remedies and that they are barred by his sovereign immunity.  See [Doc. 131, p. 20]; see also Williams v. Dewey, No. 7:15-CV-172, 2016 WL 890575, at *2 (M.D. Ga. Mar. 8, 2016) (finding that although not expressly addressed by the Eleventh Circuit, other circuits and lower courts have concluded that "front pay awards are neither prospective nor equitable relief and are therefore barred by state sovereign immunity").  Because the Court concluded above that Defendant is not entitled to sovereign immunity on Plaintiff's ADA claims, the Court does not address this argument further.  The Court notes, however, that Plaintiff may still seek back pay and front pay, should she wish to do so, at trial.

employment—no longer holds that office.  Accordingly, his successor "cannot be required to accept [P]laintiff in her former position."  Id. at 20.  In short, Defendant claims that even if Plaintiff were reinstated, Defendant could simply terminate her that same day and hire a different employee of his own preference.  Plaintiff responds that all employees of the Clayton County Sheriff's Office are covered by the Clayton County Civil Service Act (the "Civil Service Act"), which provides that employees may only be terminated for good cause.  See [Doc. 132, p. 9].  As such, Plaintiff argues that if she were reinstated, Defendant "could not simply replace her at will."  Id.

The Eleventh Circuit has held that "requests for reinstatement constitute prospective injunctive relief that fall within the scope of the Ex parte Young exception and, thus, are not barred by the Eleventh Amendment."  Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014).  However, the Eleventh Circuit has also "upheld the district court's decision to deny a plaintiff the remedy of reinstatement where the defendant public official was replaced by a new official."  Kicklighter v. McIntosh Cnty. Bd. of Comm'rs, 694 F. App'x 711, 716 (11th Cir. 2017).  In Kicklighter, the court reasoned that reinstatement was not an available remedy where the new official could simply terminate the plaintiff's employment immediately following her reinstatement.  Id.  Likewise, in Lucas v.

O'Loughlin, the Eleventh Circuit held that a request for reinstatement was merely "*de minimis*" relief because if the plaintiff were "reinstated by the order of the court, the new sheriff could terminate him the same day on the ground that he preferred the person whom he had already appointed in [the plaintiff's] place." 831 F.2d 232, 236 (11th Cir. 1987).

These cases show that reinstatement is ordinarily the kind of prospective relief contemplated by the Ex parte Young exception to Eleventh Amendment immunity but that such relief may be unavailable where the defendant official has been replaced in the course of litigation.  In this case, Hill was the Sheriff of Clayton County during Plaintiff's employment but has since been replaced by a different official.  Lucas and Kicklighter would seem to foreclose reinstatement as a remedy on the principle that Defendant could simply reinstate Plaintiff and immediately replace her with another employee of his choosing.

Plaintiff, however, points this Court to the Civil Service Act.  The act "provides that no employee who is covered under the civil service system may be dismissed from employment 'except for good cause and in accordance with civil service system rules and regulations.'"  Hill v. Watkins, 627 S.E.2d 3, 5 (Ga. 2006) (quoting Ga. L. 1994, p. 4404, § 9); see also [Doc. 132-2, p. 18] ("No regular status employee of any department or office of the county which has been brought

under the civil service system may be suspended, demoted, or dismissed from employment in the department or office except for good cause and in accordance with civil service system rules and regulations.").  In <u>Hill</u>, the original defendant in this case, Victor Hill, summarily fired twenty-seven employees from the Clayton County Sheriff's office and informed them that they were not subject to the Civil Service Act.  627 S.E.2d at 4.  Two of the former employees sought declaratory and injunctive relief and asserted that they were covered by the act.  <u>Id.</u>  The Supreme Court of Georgia confirmed that while "the elected sheriff is not subject to the civil service system, . . . those occupying positions in this office are" and determined that the act was proper under the Georgia Constitution.  <u>Id.</u> at 5.

As <u>Hill</u> shows, should Plaintiff be reinstated to employment at the Clayton County Sheriff's Office, she would be covered by the Civil Service Act and could only be terminated for good cause.  Defendant argues that he would retain the authority to dismiss Plaintiff because Rule 9.206(r) of the Civil Service Act allows the Sheriff of Clayton County to dismiss an employee for "impairing the efficiency of the operation of County business."  <u>See</u> [Doc. 135, p. 13]; <u>see also</u> [Doc. 132-2, p. 243].  Defendant does not explain, however, how this provision—which still requires cause for termination—grants him the unfettered authority to terminate employees at will.  Therefore, unlike the newly-elected officials in <u>Lucas</u> and

Kickstarter, who *could* terminate employees at will, Defendant here would be

unable to promptly dismiss Plaintiff after reinstating her absent a showing of good

cause.  On these facts, Plaintiff's request for reinstatement is not *de minimis*.

Accordingly, Plaintiff may pursue injunctive relief for her ADA claims under Ex

parte Young.[9]  The Motion is **DENIED** insofar as Defendant argues that Ex parte

Young is inapplicable to Plaintiff's request for reinstatement as a remedy for the

alleged ADA violations.[10]

---

[9] Defendant argued that in the absence of any available remedies, Plaintiff lacked
standing to pursue her ADA claims.  However, the Court determined that Plaintiff may
seek both money damages and injunctive relief.  Because Plaintiff seeks remedies that are
likely to redress the alleged harm of discrimination, she thus has standing for her ADA
claims.  Uzuegbunam v. Preczewski, 141 S. Ct. 792, 797 (2021) ("To satisfy the
'irreducible constitutional minimum' of Article III standing, a plaintiff must not only
establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he
must also seek (3) a remedy that is likely to redress that injury." (quoting Spokeo, Inc. v.
Robins, 578 U.S. 330, 338 (2016))).

[10] Plaintiff also seeks reinstatement as a remedy for Defendant's alleged violations of the
RA.  See [Doc. 54, p. 14].  Defendant does not assert Eleventh Amendment immunity as
to Plaintiff's RA claims, and even if he did, that argument would be without merit.  See
Gary v. Ga. Dep't of Hum. Res., 323 F. Supp. 2d 1368, 1373 (M.D. Ga. 2004) ("[T]he
Eleventh Circuit has concluded that states that accept federal funding do waive Eleventh
Amendment immunity for Section 504 Rehabilitation Act claims.").  Therefore, even if
Plaintiff could not maintain her request for reinstatement under the ADA pursuant to Ex
parte Young, it appears to this Court (and without any argument to the contrary from
Defendant) that the remedy of reinstatement would remain available to Plaintiff to redress
the alleged violations of the RA.

## CONCLUSION

For the reasons set forth above, the Motion for Judgment on the Pleadings

[Doc. 131] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 17th day of April, 2023.

J. P. BOULEE
United States District Judge