UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRITTANI WILLIAMS,

        Plaintiff,

v.

LEVON ALLEN, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF
CLAYTON COUNTY, GEORGIA,

        Defendant.

CIVIL ACTION NO.
1:20-CV-00186-JPB

## ORDER

This matter comes before the Court on Plaintiff Brittani Williams's

("Plaintiff") Motion for Prejudgment Interest and Reinstatement [Doc. 170] and

Motion for Attorneys' Fees [Doc. 171].  This Court finds as follows:

## BACKGROUND

On December 9, 2019, Plaintiff filed the instant employment discrimination

action in the Superior Court of Clayton County, Georgia, against Victor Hill,

individually and in his official capacity as Sheriff of Clayton County; Richard

Moen, individually; and Derrick Farmer, individually.  [Doc. 1-1, p. 2].  The

defendants removed the case to this Court on January 13, 2020.  [Doc. 1].

Thereafter, Plaintiff twice amended her Complaint.  [Doc. 4]; [Doc. 54].  In

her First Amended Complaint, Plaintiff added Clayton County as a defendant.

[Doc. 4, p. 1].  In her Second Amended Complaint, Plaintiff alleged disability

discrimination under O.C.G.A. § 34-6A-4, as well as retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Rehab Act"); and violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").  [Doc. 54, pp. 1–2, 7–16].  Plaintiff's Rehab Act and ADA claims were rooted in the three distinct legal theories:  failure to provide reasonable accommodations, wrongful termination due to disability and wrongful termination in retaliation for requests for reasonable accommodations.  [Doc. 54, pp. 13–15].

Plaintiff subsequently abandoned all claims except her ADA and Rehab Act claims against Victor Hill, in his official capacity as Sheriff of Clayton County.  [Doc. 92, p. 6].  Following summary judgment, only Plaintiff's ADA and Rehab Act claims regarding wrongful termination as to Victor Hill in his official capacity remained.[1]  [Doc. 118, p. 22].  These claims proceeded to trial, and on May 19, 2023, a jury found for Plaintiff on both counts.  [Doc. 168].

The jury awarded Plaintiff two forms of compensatory damages:  (1) $138,000.00 for emotional pain and mental anguish and (2) $64,811.96 for lost wages and benefits.  Id.  Significantly, the lost wages figure incorporates the jury's finding that Plaintiff failed to mitigate damages, and the jury awarded only half of

---

[1] Levon Allen has since replaced Victor Hill as Sheriff of Clayton County and has thereby become the named Defendant in this case.  [Doc. 123].

Plaintiff's total lost wages that accrued in the four years since her termination

($129,623.92).  Id.

## A. Motion for Prejudgment Interest and Reinstatement

Following the jury's verdict, Plaintiff filed the instant Motion for

Prejudgment Interest and Reinstatement.  [Doc. 170].  Plaintiff argues that she is

entitled to prejudgment interest on her lost wages and benefits.  Id. at 4–5.

Because the jury awarded only half of the lost wages that had accrued over the

relevant four-year period, Plaintiff looked to the two years immediately following

her termination to calculate prejudgment interest.  Id. at 4.  In accordance with this

methodology, Plaintiff calculates that she is owed $8,804.12.  Id.  Plaintiff also

moves the Court to reinstate her or, alternatively, order an additional $64,811.96 in

front pay.  Id. at 5–8.

Defendant argues that awarding prejudgment interest in this case would

result in unusual inequities and undermine the public policy of encouraging

plaintiffs to mitigate damages.  [Doc. 179, p. 5].  Defendant further contends that,

although the jury found that Plaintiff is entitled to only two years of back pay

rather than four, it is not clear whether those years are the two years immediately

following her termination, immediately preceding trial or even non-contiguous

periods.  Id. at 5–6.  Accordingly, Defendant argues, Plaintiff should not be

awarded any prejudgment interest because the amount due is not "easily

ascertainable." Id.  Defendant also maintains that neither reinstatement nor front pay are appropriate.  Id. at 6–12.  Defendant argues that:  (1) reinstatement is inappropriate because Plaintiff's termination caused her anxiety, and there has been no determination that the Clayton County Sheriff's Office can reasonably accommodate her disability; and (2) front pay is inappropriate due to Plaintiff's failure to mitigate damages.[2]  Id.

### B. Motion for Attorneys' Fees

On July 5, 2023, Plaintiff also filed a Motion for Attorneys' Fees, requesting $315,022 in fees and costs associated with the work performed on this matter since 2019.  [Doc. 171].  Plaintiff argues that the presumption in favor of awarding attorneys' fees to successful civil rights plaintiffs justifies awarding attorneys' fees in this case.  Id. 5–7.  The following table represents the attorneys' fees that Plaintiff has requested:

| Name | Title | Hours | Hourly Rate |
|------|-------|-------|-------------|
| Regan Keebaugh | Partner | 521.6 hours | $485/hour |
| James Radford | Partner | 98.6 hours | $485/hour |

---

[2] Defendant also argues that front pay is inappropriate because Plaintiff's ADA claims against Defendant are barred by immunity under the Eleventh Amendment of the United States Constitution.  However, as Defendant acknowledges, the issue of Eleventh Amendment immunity in this case has already been decided; thus, the Court need not address this argument in determining whether to award attorneys' fees, prejudgment interest, reinstatement and/or front pay.  See [Doc. 141].

| Jake Knanishu | Associate | 44.9 hours | $250/hour |
| Ila Wade | Paralegal | 15 hours | $150/hour |
| Edna Trutt | Paralegal | 5 hours | $150/hour |

Id. at 9, 19.

Plaintiff has submitted affidavits from two disinterested local attorneys to support the reasonableness of the fees.  [Doc. 171-4]; [Doc. 171-5].  Plaintiff contends that her representation resulted in an "excellent result" and that local courts have found similar fees reasonable in the past.  [Doc. 171, pp. 15–16, 23–24].  For these reasons, Plaintiff argues no adjustment her requested fees is warranted.  Id. at 23.

Defendant argues for reductions to Plaintiff's proposed fees for numerous independent reasons.  [Doc. 181].  First, Defendant argues that Plaintiff's proposed hourly rates are unreasonable and further reduction is warranted given the rising cost of attorneys' fees over the life of this case.  Id. at 8–11.  Second, Defendant argues that Plaintiff did not achieve an "excellent result" that would justify an award of all fees reasonably expended.  Id. at 11–12.  Third, Defendant contends that Plaintiff should not be compensated for time spent creating any complaint other than the Second Amended Complaint or pursuing claims dismissed at summary judgment or abandoned by Plaintiff.  Id. at 13–15, 18–20.  Fourth,

Defendant argues that Plaintiff's counsel recorded excessive time for certain tasks. Id. at 22–23.  Fifth, Defendant argues any time spent on the parallel unemployment compensation proceeding in the Department of Labor should be deducted as an unnecessary expense.  Id. at 15–18.  Sixth, Defendant posits that certain tasks billed at the attorney rate should have been billed at the paralegal rate or not billed. Id. at 24–26.  Seventh, Defendant requests that the Court strike fees charged for travel time.  Id. at 22.  Finally, Defendant argues the time expended should be reduced due to block billing.  Id. at 21–22.

Plaintiff's Motions are now ripe for review.

## ANALYSIS

### A. Prejudgment Interest

District courts have discretion in deciding whether to award prejudgment interest to prevailing plaintiffs in employment discrimination cases.  Lamb v. Clayton Cnty. Sch. Dist., No. 19-CV-0695, 2021 WL 4816614, at *7 (N.D. Ga. Aug. 10, 2021), aff'd sub nom. Lamb v. Clayton Cnty. Schs., No. 21-12887, 2023 WL 3093472 (11th Cir. Apr. 26, 2023).  However, "there is a presumption that the court should award prejudgment interest on an award of back pay to a successful . . . plaintiff."  Id. (quoting Richardson v. Tricom Pictures & Prods, Inc., 334 F. Supp. 2d 1303, 1316 (S.D. Fla. 2004), aff'd, 183 F. App'x 872 (11th Cir. 2006)).  This presumption can only be overcome if a court finds that an award of prejudgment

interest would result in "unusual inequities." Id.  In balancing the equities, courts

consider whether the back pay amount is "easily ascertainable;" if back pay is not

easily ascertainable, a court may decline to award prejudgment interest.  See

Tucker v. Hous. Auth. of Birmingham Dist., 507 F. Supp. 2d 1240, 1284 (N.D.

Ala. 2006).  Courts also take into account a plaintiff's failure to mitigate damages.

See id.; Richardson, 334 F. Supp. 2d at 1317.

Defendant argues an award of prejudgment interest is inappropriate for two

reasons:  (1) Plaintiff failed to mitigate her damages, and (2) the jury did not

identify specific dates for which Plaintiff was due back pay, so the amount of

prejudgment interest is not "easily ascertainable."  Defendant's arguments are

unavailing.  First, although failure to mitigate damages is a factor that courts weigh

in determining whether to award prejudgment interest, courts have found that

failure to mitigate, alone, is insufficient to overcome the presumption favoring

prejudgment interest awards and establish that such an award will result in

"unusual inequities."  Richardson, 334 F. Supp. 2d at 1316–17; Tucker, 507 F.

Supp. 2d at 1284.

Second, the Court is not persuaded that the jury's failure to specify the

precise dates for which back pay is due means that Plaintiff's back pay award is

not "easily ascertainable" for purposes of calculating prejudgment interest.  See

Richardson, 334 F. Supp. 2d at 1316–17; Tucker, 507 F. Supp. 2d at 1284; but cf.

Daniels v. Pipefitters' Ass'n Loc. Union No. 597, 945 F.2d 906, 925 (7th Cir. 1991) (denying prejudgment interest where there was no basis for the court to determine which portion of the compensatory damage award constituted back pay). Defendant has not disputed that Plaintiff's damages in the amount of $64,811.96 comprise two years' worth of back pay owed to Plaintiff.  Rather, Defendant argues that the specific back pay period cannot be determined—that is, what precise dates make up the two years of back pay awarded—and, therefore, the amount of prejudgment interest cannot be determined.  See [Doc. 179, p. 6].

However, courts have held that prejudgment interest should generally be computed from the date of the adverse employment action through the date of judgment.  Richardson, 334 F. Supp. 2d at 1316–17.  Because prejudgment interest generally begins to accrue from the date of the adverse action, the Court exercises its discretion in finding that prejudgment interest in the amount of $8,804.12[3]—in accordance with the table submitted by Plaintiff in her motion, [Doc. 170, p. 4]—is an appropriate award.[4]  See Tucker v. Hous. Auth. of Birmingham Dist., No. 01-CV-2038, 2006 WL 8436614, at *4 (N.D. Ala. Aug. 2, 2006) (calculating

---

[3] The prejudgment interest rate is calculated using IRS prime rates in accordance with the practices of the National Labor Relations Board and is compounded on a quarterly basis. E.E.O.C. v. Guardian Pools, Inc., 828 F.2d 1507, 1512 (11th Cir. 1987); Johnson v. TMI Mgmt. Sys., Inc., No. 11–0221, 2012 WL 3257809, at *2 (S.D. Ala. Aug. 7, 2012).

[4] The Court is also of the view that this award comports with the most natural interpretation of the jury's verdict—that is, that after two years of failing to obtain employment, Plaintiff's inability to do so became unreasonable. See [Doc. 168].

prejudgment interest on two years of back pay starting from the date of the adverse action where the logical presumption was that the jury had reduced plaintiff's award based on the plaintiff's failure to mitigate damages); Tucker, 507 F. Supp. 2d at 1280.

### B. Reinstatement and Front Pay

The ADA authorizes this Court to award equitable relief to prevailing plaintiffs, including reinstatement and front pay.  Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1338–39 (11th Cir. 1999).  Money damages are often not sufficient to mend the injury of wrongful termination, so "reinstatement offers the most likely means of making a plaintiff whole by allowing her to continue her career as if the discrimination had not occurred."  Id. at 1338.  For that reason, the Eleventh Circuit Court of Appeals has held that there is a presumption favoring reinstatement for victorious plaintiffs in wrongful discharge actions.  Id.  In fact, reinstatement is required except in extraordinary cases.  Id. at 1338–39 (citing Allen v. Autauga Cnty. Bd. of Educ., 685 F.2d 1302, 1305 (11th Cir. 1982)).

Extraordinary cases include, for example, where "discord and antagonism" between the parties would make reinstatement ineffective as a make-whole remedy.  Id. at 1339.  Importantly, the presence of some hostility between parties is expected and should not normally preclude a plaintiff from reinstatement.  Id.  Otherwise, liable defendants would be able to profit from their discriminatory

conduct.  See id.  However, in the extraordinary cases where reinstatement is not suitable, front pay is an appropriate equitable remedy.  Id. (citing Haskins v. City of Boaz, 822 F.2d 1014, 1015 (11th Cir. 1987)).  In such extraordinary cases, a court denying reinstatement in favor of front pay must "carefully articulate" its reasons for doing so.  Id.

Here, Plaintiff wishes to return to her position with Defendant; it is Defendant who contends reinstatement is not feasible.  Defendant argues that (1) Plaintiff should not be reinstated because Defendant's wrongful termination of Plaintiff cause her anxiety and (2) because of Plaintiff's disability, it is not clear that Defendant could find a suitable position for Plaintiff if she returned.  Plaintiff has made clear that returning to her prior position is her preferred remedy.  See [Doc. 180, p. 7].

With respect to Defendant's first argument, the Court is reluctant to deny Plaintiff her requested remedy—which is also the presumptive remedy—based solely on Defendant's supposition that the anxiety caused by Plaintiff's termination will continue upon her return to work such that reinstatement will be ineffective as a make-whole remedy.  The Court is concerned that to deny reinstatement for such reasons would allow Defendant to profit from his discriminatory conduct.  See Farley, 197 F.3d at 1339.  Thus, the Court declines to deny reinstatement on these grounds.

Regarding Defendant's argument that there is no workable position for Plaintiff with Defendant, Plaintiff argues that the jury's finding that Plaintiff was a "qualified individual" demonstrates Defendant's argument is misplaced.  See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) (explaining that a "qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions and job requirements of [her previous] position").  While it is true, as Defendant contends, that no finding has been made in this case regarding whether a reasonable accommodation could have been made for Plaintiff, the jury's finding indicates that Plaintiff would be capable of performing her job duties if reinstated.  Accordingly, the Court finds that the instant action is not the "extraordinary case" that can overcome the strong presumption in favor of reinstatement.  See Farley, 197 F.3d at 1338–39.

Plaintiff's Motion for Prejudgment Interest and Reinstatement is hereby **GRANTED**.

### C. Attorneys' Fees

Under the ADA, a court may award a prevailing plaintiff reasonable attorneys' fees, including litigation expenses and costs.  42 U.S.C. § 12205.  A court may also award attorneys' fees to a successful plaintiff under the Rehab Act.  29 U.S.C. § 794a(b).  Plaintiff is a prevailing party in this case.  See Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989) (finding that a

prevailing party is one who has succeeded on any significant claim affording it some of the relief sought).

To determine an appropriate award for attorneys' fees, courts calculate the "lodestar":  the product of multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.  <u>Martinez v. Hernando Cnty. Sheriff's Off.</u>, 579 F. App'x 710, 713 (11th Cir. 2014).  The "lodestar" may then "be adjusted for the results obtained."  <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994).  The party seeking attorneys' fees bears the burden of producing sufficient evidence that the requested amount is reasonable.  <u>Martinez</u>, 579 F. App'x at 713.  Additionally, the Local Rules of this Court require the movant to "file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation."  N.D. Ga. Civ. R. 54.2(A)(2).

### i.   *The Reasonable Hourly Rate*

The Court begins its lodestar calculation by determining whether the proposed hourly rates are reasonable.  A "reasonable hourly rate" is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  <u>Norman v. Hous. Auth. of City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988).  The relevant market for determining the reasonable hourly rate is "the place where the

case is filed." Griffith v. McDonough, No. 20-14464, 2021 WL 4461605, at *1 (11th Cir. Sept. 29, 2021) (quoting Am. C.L. Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999)).  Similar to the total award of fees, "[t]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." Norman, 836 F.2d at 1299.  "An applicant can meet its burden of supporting its hourly rate by producing direct evidence of rates charged in similar cases, or by presenting opinion evidence of reasonable rates." Kearney v. Auto-Owners Ins., 713 F. Supp. 2d 1369, 1376 (M.D. Fla. 2010).

Here, Plaintiff provided both affidavits from disinterested local attorneys supporting the reasonableness of the proposed fees and provided past cases from this district approving similar fees.  Indeed, the fees charged in this case ($485/hour for two highly experienced attorneys, and $250/hour for a young associate) are well within the bounds of fees approved by this Court in the past. See, e.g., Stimson v. Stryker Sales Corp., No. 17-CV-00872, 2022 WL 376375, at *3–4 (N.D. Ga. Feb. 8, 2022) (approving hourly rates of $780/hour for the most senior partner, $510-$552/hour for more junior partners and $400-$464/hour for associates); Scott v. Novartis Pharms. Corp., No. 14-cv-04154 (N.D. Ga. Jan. 31, 2017) (order granting in part the defendants' request for fees and approving a rate of $250/hour for a second-year associate).  Furthermore, Defendant's contention that it is inappropriate to use current prevailing rates to compensate for hours billed

at the start of this litigation (beginning in 2019) contradicts Eleventh Circuit case

law.  Norman, 836 F.2d at 1302 (citing Gaines v. Dougherty Cnty. Bd. of Educ.,

775 F.2d 1565, 1572 n.14 (11th Cir. 1985)).  The affidavits provided by Plaintiff

and the recent approval of similar fees demonstrate that all of the hourly rates

proposed by Plaintiff are reasonable.

### ii.     *Number of Hours Reasonably Expended*

The Court now addresses whether Plaintiff's attorneys' hours were

"reasonably expended" on this litigation.  Defendant provides a wide variety of

reasons why the Court should reduce the Plaintiff's hourly fees.  To summarize,

Defendant argues:  (1) Plaintiff did not attain an "excellent result" and is thus

entitled to only necessary fees, not "reasonably expended" fees; (2) Plaintiff is not

entitled to fees for work spent on subsequently amended complaints, abandoned

claims or claims that failed at summary judgment; (3) Plaintiff's counsel

excessively billed for specific tasks; (4) Plaintiff is not entitled to recover for time

spent on an employment compensation proceeding; (5) Plaintiff's counsel

impermissibly charged for clerical tasks and charged attorney rates for paralegal

tasks; (6) Plaintiff's counsel impermissibly charged for travel time; and (7)

Plaintiff's counsel engaged in block billing.  The Court addresses each of these

arguments in turn.

### 1. Excellent Result

The parties disagree about whether Plaintiff's success at trial constitutes an "excellent result."  Plaintiffs who attain an excellent result can recover "all hours reasonably expended on the litigation . . . ."  Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).  Contrarily, for plaintiffs that have achieved only "partial or limited success," the product of hours reasonably expended on the litigation as a whole may be excessive.  Id. at 436.  In those cases, where the "relief, however significant, is limited in comparison to the scope of the litigation as a whole," a reduction of fees may be justified based on the limited success.  Id. at 439–40.  In making this determination, the Court must focus on "the significance of the overall relief obtained."  Villano v. City of Boynton Beach, 254 F.3d 1302, 1308 (11th Cir. 2001) (quoting id. at 435).  The significance includes both the personal success of the plaintiff and the public benefit achieved.  Id.  Courts should not place "undue emphasis on the modest money damages that were found by the jury because successful civil rights actions vindicate a public interest."  Id. at 1306.

Defendant argues that Plaintiff did not obtain an "excellent result" because she failed to attain maximum damages at trial despite highly favorable facts.  Even assuming that the damages awarded could be fairly characterized as modest, the Eleventh Circuit has instructed that courts should not place "undue emphasis" on modest money damages.  See id.  Instead, the Court must look at the significance

of the relief obtained in this case with an eye to both the private and public
interests.  In terms of private interest, Plaintiff's judgment represents a legal
determination that Defendant discriminated against her.  The jury awarded her
more than $200,000 in damages and, upon entry of this order, she will be reinstated
to her position.  In terms of public interest, the judgment in this case echoes a
principle in the Eleventh Circuit that "a public benefit inures when a plaintiff
prevails against a public body in civil rights litigation."  Id.  Accordingly, upon
review of the private and public significance of the relief in this case, the Court
finds that the result attained by Plaintiff entitles her to attorneys' fees for "all hours
reasonably expended on the litigation."  Hensley, 461 U.S. at 435.

### 2. Claims That Did Not Proceed to Trial

The Court now evaluates whether the billed time was "reasonably expended
on the litigation."  Id.  Defendant first argues that the hours spent drafting
complaints that were subsequently amended or pursuing claims that did not
proceed to trial were not reasonably expended.  In civil rights cases, it is common
for plaintiffs to raise alternative legal theories for a desired outcome, and "the
court's rejection of or failure to reach certain grounds is not a sufficient reason for
reducing a fee."  Id.  Instead, the operative question is whether the unsuccessful
and successful claims shared a "common core of facts" or were "based on related
legal theories."  See id.  If so, the Court should award attorneys' fees for those

related claims so long as the plaintiff achieved an excellent result.  See id. at 435–36.  Conversely, the Court should not include time spent on "discrete and unsuccessful claims."  Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996).

Here, although some of Plaintiff's claims against certain defendants were abandoned or dismissed at summary judgment, those claims shared a common core of facts with Plaintiff's successful claims.  Thus, the Court does not find the time spent pursuing other related claims and crafting the subsequently-amended complaints was unconnected to Plaintiff's success in this case.  For these reasons, the Court does not find it appropriate to limit the recoverable fees to only the time spent pursuing Plaintiff's successful ADA and Rehab Act claims and drafting the Second Amended Complaint.

### 3. Excessive Billing

Defendant next contends that Plaintiff's counsel excessively billed for certain tasks.  Specifically, Defendant argues that the time billed for Mr. Radford and Mr. Keebaugh on the last day of trial (each 7.5 hours) was excessive given that the jury rendered its verdict around 3:30 p.m. and there was a midday break for lunch.  Further, Defendant avers that Mr. Knanishu was not needed at trial, so the 10 hours he billed for attending trial should be cut.  Finally, Defendant argues that

Mr. Keebaugh billed 8.8 hours for a deposition that lasted only 6 hours and similarly billed 6.5 hours for a pre-trial conference that lasted only 2 hours.

In the Eleventh Circuit, "excessive, redundant or otherwise unnecessary" hours should be excluded from the amount claimed.  Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 434).  Hours are excessive if they exceed what would be reasonable to bill a client without regard to the skill, reputation or experience of counsel.  Barnes, 168 F.3d at 428.  Redundant hours "generally occur where more than one attorney represents a client."  Norman, 836 F.2d at 1301–02.  Significantly, it is not inherently unreasonable for a client to have multiple attorneys.  Barnes, 168 F.3d at 432.  Because it is not inherently unreasonable to have more than one attorney, a reduction for redundant hours "is warranted only if the attorneys are *unreasonably* doing the *same* work."  Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983) (emphasis in original).  In fact, "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer." Id.

A fee applicant bears the burden of showing "that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation."  Barnes, 168 F.3d at 432. Importantly, where there is an objection raising the issue of redundant billing, as

was the case here, the fee applicant's burden "is not a make-believe burden." Id.
Finally, when a party opposing fees raises a specific objection, the Court must
provide specific reasons for denying it. Id. at 428–29.

Accordingly, the Court will address each of Defendant's specific objections.
First, the Court agrees that it would be unreasonable to ask the client—and, here,
Defendant—to pay for down time on trial days if that time was not spent
performing the work of an attorney. See Hithon v. Tyson Foods, Inc., 151 F. Supp.
3d 1252, 1262 (N.D. Ala. 2015) (finding attorneys may not charge attorney rates
when not performing work that requires the skill of an attorney). In reply, Plaintiff
states although they had a significant amount of down time on the last day of trial,
both Mr. Radford and Mr. Keebaugh were at the courthouse during the time billed.
[Doc. 184, p. 13]. The Court does not find mere presence in the courthouse to be
sufficient to carry Plaintiff's burden and will thus deduct 2.5 hours each from Mr.
Keebaugh's and Mr. Radford's time.

With respect to Mr. Knanishu's time at trial, the Court will not deduct his
time as excessive.[5] The "distinct contribution" of Mr. Knanishu's time is reflected
in the billing entry, which makes clear that Mr. Knanishu attended to assist with
voir dire and legal research issues that may have arisen while trial was ongoing.
[Doc. 171-1, p. 2].

---

[5] The Court addresses Mr. Knanishu's travel time below.

With regards to the deposition, the Court finds that 8.8 hours was excessive. Plaintiff avers that although the deposition was only 6 hours, the entry also included preparation time.  However, Plaintiff does not address the preceding billing entry: "prepare for deposition of Victor Hill" for 4 hours.  See [Doc. 171-1, p. 8].  For that reason, Plaintiff did not meet her burden, and the Court further reduces Mr. Keebaugh's billed time by 2.8 hours.

Finally, the Court does not find Mr. Keebaugh excessively billed for the pretrial conference.  The entry identifies not only attendance of the two-hour pretrial conference but also preparation for that conference.[6]  The Court finds that the total time spent by counsel was reasonable to ensure that the conference was productive and will not deduct this time.

### 4. Unemployment Compensation Proceeding

Defendant also argues that the Court should strike all fees derived from Plaintiff's Department of Labor unemployment compensation proceeding.  The district court may "deny any fees for time spent pursuing optional administrative remedies."  Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 244 (1985).  However, the Court should include time expended on administrative proceedings that are both "useful and of a type ordinarily necessary to advance the civil rights litigation . . . ."  See id. at 243.  Notably, other courts have found unemployment

---

[6] To the extent that this entry is plagued by block billing, the Court addresses it below.

compensation proceedings to be unnecessary in similar contexts.  See Reynolds v. U.S.X. Corp., 170 F. Supp. 2d 530, 532 n.3 (E.D. Pa. 2001); Renbarger v. S. Bend Cmty. Sch. Corp., Nos. S 82-283, S 82-485, 1990 WL 78008, at *25 (N.D. Ind. Apr. 10, 1990).

Here, Plaintiff argues that the Department of Labor proceeding should be compensable because the outcome could have had a collateral estoppel effect on the litigation.  [Doc. 184, p. 10].  Assuming Plaintiff is correct that the proceeding may have affected the litigation, Plaintiff still does not address why this unemployment compensation proceeding is "of a type ordinarily necessary to advance the civil rights litigation."  Because Plaintiff has not provided such reasons, the Court finds—in line with other courts that have addressed this issue— that this proceeding is not compensable.  Accordingly, the Court excludes 5.6 hours from Mr. Keebaugh's recorded time.  See [Doc. 171-1, pp. 34–35].[7]

### 5.  Clerical Work and Paralegal Tasks

Defendant asks this court to further reduce Plaintiff's fees for clerical tasks, such as filing and trial exhibit preparation, and tasks that are traditionally performed by a paralegal.  [Doc. 181, pp. 24–26].  Purely clerical or secretarial

---

[7] One of Plaintiff's counsel's time entries includes a 1.6-hour entry for discussions related to the unemployment proceedings among other intake discussions.  The Court excludes 0.6 hours from this entry as relating to the unemployment compensation proceeding and addresses block billing below.

tasks are not compensable fees.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989); Hithon, 151 F. Supp. 3d at 1261.  Furthermore, where an attorney performs tasks that are typically and properly performed by paralegals, courts should reduce the fee down to the paralegal rate.  See Jenkins, 491 U.S. at 288 n.10.

Mr. Keebaugh made eleven entries—and Mr. Radford one entry—that include "filing" certain documents with the Court.  Mere filing falls into the category of purely clerical work that is not compensable.  See Tanzella v. G & G Ins. Adjusters, Inc., No. 16-CIV-62288, 2017 WL 11742640, at *3 (S.D. Fla. Sept. 22, 2017).  As a result, the Court will reduce 1.1 hours (0.1 hours deducted from each entry) and 0.1 hours from Mr. Keebaugh's and Mr. Radford's time for document filing, respectively.

Defendant also contends that the paralegal time billed for trial exhibit preparation is purely clerical and not compensable.  As such, Defendant argues that 20 hours of paralegal time for exhibit preparation should be deducted from Plaintiff's fee award.  Other courts in this circuit have held that such tasks are clerical in nature and not compensable.  See Grayson v. No Labels, Inc., No. 20-CV-1824, 2024 WL 473775, at *22 (M.D. Fla. Jan. 4, 2024) (collecting cases).  Thus, the Court will reduce Edna Trutt's time by 5 hours and Ila Wade's time by 15 hours to eliminate the costs associated with these tasks.

Defendant also challenged certain of Plaintiff's counsel's time on the grounds that the time was spent on traditional paralegal tasks. These tasks include editing a videotaped deposition (7.5 hours), reviewing VA records for production and preparing production for opposing counsel (3.5 hours), summarizing witness deposition testimony in anticipation of summary judgment motions (18.5 hours), as well as time spent preparing and filing deposition notices and preparing exhibits (approximately 2.9 hours[8]) and communicating about deposition scheduling (approximately 1.8 hours[9]) between March 5, 2021, and March 24, 2021. See [Doc. 181, pp. 24–26]. The Court will address these in reverse order.

Upon review, the Court agrees with Defendant that communications about deposition scheduling are more appropriately cast as paralegal time. See Williams v. R.W. Cannon, Inc., 657 F. Supp. 2d 1302, 1311 (S.D. Fla. 2009) ("[T]he primary purpose of [the] correspondence was to coordinate scheduling with opposing counsel regarding court dates, depositions and joint filings, which

---

[8] Four time entries between March 5, 2021, and March 24, 2021, relate to the preparation of deposition notices and exhibits. Three entries—totaling 2.4 hours—relate to drafting and filing notices to take depositions. One entry includes preparing deposition exhibits among other tasks (preparing for the deposition and creating the deposition outline); for this entry, the Court attributes 0.5 hours to the preparation of exhibits. See [Doc. 171-1, pp. 23–26].

[9] Six time entries between March 5, 2021, and March 24, 2021, reflect time spent corresponding about deposition scheduling for a total of 1.6 hours. One additional entry includes correspondence about both deposition scheduling and 30(b)(6) topics for a total of 0.5 hours; the Court attributes 0.2 hours of this entry's hours to correspondence regarding deposition scheduling, in line with other scheduling correspondence entries submitted. See [Doc. 171-1, pp. 23–26].

constitute basic communications that are typically handled by legal assistants or paralegals, not lawyers.").  Thus, the Court accepts Defendant's suggestion to reduce this time (1.8 hours) to the paralegal rate of $150/hour.

With respect to preparation of the deposition notices, the Court does not find that a reduction is warranted.  See Miller v. Kenworth of Dothan, Inc., 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000) (allowing compensation for attorney time spent preparing deposition notices).   The Court will, however, deduct 0.5 hours from Mr. Keebaugh's time to account for the preparation of exhibits, which the Court has already determined constitutes a clerical task.

As for the remaining entries to which Defendant objects (reviewing and editing a videotaped deposition; reviewing and preparing records for production; and summarizing witness testimony in anticipation of summary judgment motions), the Court is persuaded that the performance of these tasks required an understanding of legal issues and/or strategy.  Thus, the Court finds that it was reasonable for an attorney to have performed them, and no further reduction is warranted on these grounds.

Finally, although Defendant did not specifically object to it, the Court also finds that it is appropriate to reduce Mr. Keebaugh's time by 2 hours to deduct the May 9, 2023 entry for "travel to courthouse to test audio/visual equipment."  The

Court finds that the testing of audio and visual equipment does not require the unique skills of an attorney and constitutes a clerical task.[10]

### 6. Travel Time

Defendant also contests fees charged for Mr. Knanishu's travel time on May 16, 2023. In the Eleventh Circuit, awards of travel expenses are commonly granted as an element of cost. See Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983). Indeed, other cases from this district support the awarding of attorney travel expenses for successful ADA plaintiffs. See Allen v. Banks County, No. 16-CV-0076, 2018 WL 7143971, at *5 (N.D. Ga. Dec. 11, 2018). However, the Court notes that Mr. Knanishu is a local attorney, and Plaintiff, in her reply brief, suggested that a 2-hour reduction for Mr. Knanishu's travel time may be appropriate. See [Doc. 184, p. 12]. Thus, the Court will reduce Mr. Knanishu's fees by 2 hours.

### 7. Block-Billing

Defendant avers that Plaintiff engaged in impermissible block billing. Block billing is the practice of listing multiple tasks on a single entry, without separately identifying the time spent on each task. Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 F. App'x 198, 203 (11th Cir. 2012). The Eleventh

---

[10] Because the Court finds that the underlying task is not compensable, the Court also declines to award fees for Mr. Keebaugh's time traveling to perform this task.

Circuit has explained that block billing results in imprecision in an attorneys' records.  Id.  "When attorneys include multiple tasks in a single time entry, courts cannot determine the amount of time spent on particular tasks."  Kearney, 713 F. Supp. 2d at 1377–78.  "While attorneys cannot be expected to account for every second of their time, they should be expected to explain in discrete entries the nature of the work that they want a client or opposing party to pay them hundreds of dollars to perform."  Id. at 1378.  Where block billing occurs, "across-the-board reductions" have been approved by courts to offset the effects of block billing.  Ceres Env't Servs., 476 F. App'x at 203 (finding a 10% reduction for block billing was not an abuse of discretion).

Upon review, the Court agrees that Plaintiff engaged in some block billing.  For example, Plaintiff's counsel includes reviewing a motion for judgment on the pleadings, conducting legal research in response to that motion and drafting the response motion in one billing entry.  See [Doc. 171-1, p. 11].  Additionally, some of the block billing entries are particularly troublesome because they contain both compensable and non-compensable tasks, such as communications about Plaintiff's legal claims and planning for the unemployment compensation proceeding.  Id. at 35.  That said, the Court has already made specific cuts for much of the problematic billing in this case.  And while some billing entries contain block billing, most appear to comply with good billing practices.

Accordingly, the Court will impose only an additional 5% reduction to total fees and costs on top of the specific deductions for block billing in this case.

### iii.    Summary of Calculations

"The Eleventh Circuit has stated that a court granting an award of attorneys' fees should provide a summary table explaining how it arrived at the calculation of the attorneys' fees and costs awarded." Lambert v. Fulton County, 151 F. Supp. 2d 1364, 1379 (N.D. Ga. 2000) (citing Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co., 207 F.3d 1247, 1252 (11th Cir. 2000); Barnes, 168 F.3d at 439; Duckworth, 97 F.3d at 1400). As such, the Court provides the following summary calculation of the attorneys' fee award in this case:

| Name | Position | Hours | Adjustment | Adjusted hours | Rate | Outcome |
|---|---|---|---|---|---|---|
| R. Keebaugh | Partner | 521.6 hours | (-) 5.3 overbilling<br><br>(-) 5.6 unemployment proceeding<br><br>(-) 3.6 clerical tasks<br><br>(-) 1.8 paralegal work | 505.3 hours | $485/ hour | $245,071 |
| J. Radford | Partner | 98.6 hours | (-) 2.5 overbilling<br><br>(-) 0.1 clerical tasks | 96 hours | $485/ hour | $46,560 |
| J. Knanishu | Associate | 44.9 hours | (-) 2.0 travel time | 42.9 hours | $250/ hour | $10,725 |

| I. Wade | Paralegal | 15 hours | (-) 15 clerical tasks | 0 hours | $150/ hour | $0 |
|---|---|---|---|---|---|---|
| E. Trutt | Paralegal | 5 hours | (-) 5 clerical tasks | 0 hours | $150/ hour | $0 |
| Reallocated Paralegal Hours | Paralegal | 0 hours | (+) 1.8 reallocated paralegal time | 1.8 hours | $150/ hour | $270 |
| | | | | | | $302,626 |
| | 5% reduction for block billing | | | $302,626 x 0.95 = $287,495 | | |

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Prejudgment Interest and Reinstatement [Doc. 170] is **GRANTED**. Additionally, Plaintiff's Motion for Attorneys' Fees and Costs [Doc. 171] is **GRANTED IN PART** to the extent the Court finds that Plaintiff is entitled to attorneys' fees and **DENIED IN PART** to the extent that the Court finds that Plaintiff is not entitled to the full amount she seeks. It is **HEREBY ORDERED** that Plaintiff shall recover $8,804.12 in prejudgment interest and $287,495 in attorneys' fees and costs, and that Defendant shall reinstate Plaintiff to her previous employment. The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 6th day of March, 2024.

**J. P. BOULEE**
United States District Judge